SILVERS v. NERDLINGER and Another.

NEGLIGENCE.— *Excavation in Sidewalk of City.—Injury to Person.*— The owner of a lot in a city, having, by permission of the city authorities, caused an excavation to be made in a sidewalk along which people are accustomed to pass, for the purpose of constructing an area by the side of a building to be erected on such lot, it is his duty to see that proper protection against injury to persons passing along the sidewalk is provided; and if, in consequence of such excavation being insufficiently guarded, a passer on the sidewalk falls in and is injured, without his own fault, the lot at the time, for the purpose of constructing the area and erecting the building under a contract, being in the exclusive possession of a third person, the contractor, who has complied with the stipulations of his contract, the owner is liable for the injury so received.

SAME.— *Contractor.—Recovery Over Against.*—Where there is no provision in the contract that the contractor shall have exclusive possession of the lot, or stipulation that he shall keep the area properly guarded during the progress of the work, as between him and the owner, there is no implied obligation that the contractor shall keep it so guarded, whatever liability he may incur to others by leaving it unguarded; and, having performed his work according to the contract, he is not liable over to the owner for damages recovered against the latter for such injury.

CONTRIBUTION.— *Joint Wrong Doers.*—Where a recovery has been had against one of several joint wrong doers, he has no remedy against the others for contribution.

APPEAL from the Laporte Circuit Court.

ELLIOTT, J.—This was an action by Nerdlinger and Oppenheimer against Silvers, the appellant. It is alleged in the complaint that on the 10th of April, 1865, Silvers contracted with the plaintiffs to erect for them a building on a lot on the corner of Columbia and Calhoun streets, in the city of Fort Wayne, and that the plaintiffs, for that purpose, delivered to Silvers the exclusive possession of said lot; that there was a sidewalk in front of the lot, along which the inhabitants of the city were accustomed to pass and repass, and that during the erection of the building, Silvers, with the consent of the city authorities, made an excavation in the sidewalk, for the purpose of erecting the necessary walls and cellar ways of the building; that it

was his duty, while so in the possession of the lot, to keep the pit, so excavated, sufficiently guarded and protected to prevent injury to persons passing along the sidewalk, which he negligently failed to do; and that in consequence of the pit being left exposed and unguarded, one Charles Dwelly, in passing along said sidewalk, fell into the pit and was greatly injured thereby; that Dwelly afterwards sued the plaintiffs in the Allen Circuit Court for the damages so sustained by him, in which suit he recovered the sum of one thousand dollars, and costs, all of which the plaintiffs paid.

The contract between the parties and a transcript of the proceedings and judgment in the suit of Dwelly against the plaintiffs are made part of the complaint. The contract does not provide that Silvers should have the exclusive possession of the lot, nor does it contain any provision requiring him to guard the area excavated in the sidewalk.

Silvers filed an answer of six paragraphs. The *first* is a general denial. The *second*, *fourth*, and *sixth* paragraphs were stricken out on motion, and a demurrer sustained to the *third*. No question arises on the *fifth*. The third paragraph denies that there was anything in the contract making it the duty of Silvers to guard the pit, and alleges that the excavation was necessarily connected with the work to be done under the contract; that during the progress of the work the plaintiffs had their place of business diagonally across the street from the excavation, not exceeding one hundred feet, and knew, at all times, how the excavation was protected; and that on the night of the accident, and just before the happening thereof, one of the plaintiffs passed along immediately by and in full view of said excavation, and well knew its condition and how it was guarded and protected.

The court—to which the cause was submitted for trial by agreement of the parties, without a jury—at the request of the appellant, found the facts specially, and the conclusions of law arising thereon, as follows:—"That on the 10th day of April, 1865, the plaintiffs and defendant entered into a

written agreement, which is set forth in the complaint, by which the defendant agreed to furnish all the necessary materials and erect for the plaintiffs a building on a lot owned by the plaintiffs at the corner of Calhoun and Columbia streets, in the city of Fort Wayne; that it was a part of the contract that the defendant should make excavations in the sidewalk along the side of said building, for the purpose of constructing areas by the side of said building; that the plaintiffs delivered to the defendant the exclusive possession of said lot, for the purpose of erecting said building under said contract; that it was not specially provided in said contract that the defendant should guard said excavations by barricade or otherwise, during the progress of said work; that the defendant did, during the progress of said excavations, attempt to guard the same, but that on the night of the 28th day of October, 1865, and whilst the defendant was in the exclusive possession of said lot, in the performance of said contract, the said excavations were not sufficiently guarded or protected, and that one Charles Dwelly fell into said excavation and was injured; that on the 16th day of March, 1866, said Dwelly commenced a suit in the Allen Circuit Court against the plaintiffs to recover damages for said injury, and recovered judgment therein for one thousand dollars and costs, taxed at ninety-eight dollars, all of which the plaintiffs paid, on the 1st day of January, 1867, and before the commencement of this suit. And the court finds that the defendant knew of the pendency of said suit in time to make his preparations and defend the same, on the trial, but that he did not defend the same; that said notice was not given him by said plaintiffs; that the knowledge thereof was communicated to him by citizens of Fort Wayne; that he knew of the time of the trial thereof. And the court further finds that the plaintiffs had full knowledge of the progress of said work, the digging of said pit, and the manner of protecting the same by the defendant, during the progress of the work, and on said 28th day of October, 1865.

And the court finds, as a conclusion of law upon said facts, that said defendant is bound by said judgment, and liable to pay the amount thereof, with interest thereon from the date of the payment thereof, amounting to fifty-five dollars."

Silvers excepted to the conclusions of law as stated by the court; and also moved for a new trial, for the reasons that the finding of the court is contrary to law, and to the evidence in the case. Which motion the court overruled, and rendered judgment for the plaintiffs for $1,153 and costs.

The errors assigned are:—1. The court erred in sustaining the demurrer to the third paragraph of the defendant's answer. 2. The court erred in the conclusions of law arising upon the facts. 3. The court erred in overruling the appellant's motion for a new trial.

It is insisted by the appellant's counsel that the complaint does not show a valid cause of action in favor of the plaintiffs below, and that the demurrer to the third paragraph of the answer should, therefore, have been overruled.

The same question, substantially, is presented by the exception to the conclusions of law stated by the court, arising upon the facts so specially found. Several questions are presented in argument as reasons why the conclusions of law stated by the court are erroneous; one of which is, that Silvers did not have such notice of the suit of Dwelly against the plaintiffs below as to bind him by the judgment in that case, even if he is answerable over to them, which is denied.

The case will be disposed of by the conclusion to which we have arrived upon the question of the liability of Silvers to Nerdlinger and Oppenheimer upon the facts as they appear in the complaint, as well as by the special findings of the court; and will render it unnecessary that we should examine the question of the sufficiency of the notice to Silvers of the Dwelly suit to bind him.

That Nerdlinger and Oppenheimer, for whom the area was excavated, were legally liable to Dwelly, he not being

in fault, is not controverted by them. Indeed, their right to recover over against Silvers, the contractor, is based by them on the assumption that they were properly so held liable; for, if they were not liable to Dwelly, it could not be claimed, with any show of plausibility, that Silvers, however formally notified of that suit, would be concluded by the judgment, or thereby rendered liable to refund the amount recovered against them without authority of law.

It is claimed, however, as Nerdlinger and Oppenheimer were made liable to Dwelly, because the area was constructed by their procurement and for their use and benefit, that Silvers is liable over to them, because he had the exclusive possession of the lot at the time, and it was his duty as contractor to keep the area properly guarded.

It was held by the Supreme Court of Pennsylvania, in the case of *Painter* v. *The Mayor &c. of Pittsburgh,* 46 Penn. St. 213, that where a person employs another, exercising a distinct employment, to do work by a special contract, for a stipulated sum, and does not interfere with the mode of performance, he is not responsible for the acts or negligence of the contractor or his employees; and the principle was applied in favor of the city of Pittsburgh, against which the suit was brought to recover damages for causing the death of a person, who, in passing along one of the streets of the city, fell into a pit, excavated in the erection of a sewer that was being constructed for and under a contract with the city, and which was negligently left open and unprotected by proper barricades.

The principle enunciated in that case has been much discussed by the courts, both in England and this country. Many of the cases are collected in a note to that case in 3 Am. Law Reg. (N. S.) 350, and will be found to be in direct conflict. The proper rule on the subject seems to be that laid down by the Supreme Court of the United States, in *The City of Chicago* v. *Robbins,* as follows:—" Where the obstruction or defect, caused or created in the street, is purely collateral to the work contracted to be done, and is

entirely the result of the wrongful acts of the contractor or his workmen, the rule is that the employer is not liable; but where the obstruction or defect which occasioned the injury results directly from the acts which the contractor agrees and is authorized to do, the person who employs the contractor and authorizes him to do those acts is equally liable to the injured party." The same distinction is fully recognized in *Storrs* v. *The City of Utica*, 17 N. Y. 104.

The recovery in this case against Silvers, as we have seen, is based on the assumption that Nerdlinger and Oppenheimer were properly held liable to Dwelly. Admitting this to be so, then the question is, does the law arising upon the facts of the case hold Silvers responsible to answer over to them?

In the discussion of this question we put out of view all question as to the sufficiency of the notice to Silvers of the pendency of that suit, to make it conclusive upon him, if he is otherwise liable.

Here the area was dug by permission of the city authorities, who had exclusive control over the streets. It was a special favor granted to Nerdlinger and Oppenheimer alone, as the owners of the lot, and the benefits resulting therefrom enured exclusively to them, and it was their duty to use every reasonable care that the privilege thus granted should be so exercised as not to become a nuisance, or produce injury to others; and sound public policy, as well as justice, requires that they should be held responsible for any injury caused by a neglect of that duty.

It is said in the case of *The City of Chicago* v. *Robbins*, 2 Black, U. S. S. C. 418, that the owner of a lot for whose benefit such an area is constructed, cannot escape liability by letting the work out to a contractor, and shift responsibility on him if an accident occurs. "He cannot even refrain from directing his contractor in the execution of the work so as to avoid making the nuisance. A hole cannot be dug in the sidewalk of a large city, and left without guards and lights at night, without great danger to life and

limb, and he who orders it dug, and makes no provision for its safety is chargeable if injury is suffered."

The digging of the area was lawful. It was not a nuisance, *per se*, but was rendered such by the neglect to keep it properly protected and guarded so as to avoid injury. It was the duty of Nerdlinger and Oppenheimer, at their peril, to see that it was so guarded. They neglected that duty, whereby the area became a nuisance, and the injury resulted to Dwelly. By that neglect they became wrong doers, and were properly held responsible. They did not protect the area, nor even use the precaution to provide in the contract that Silvers, the contractor, should do so. The construction of the area was a necessary part of the work in the erection of the building. Silvers was required to construct it by the contract, and no complaint is made as to the manner in which the work was done. The obstruction, then, which occasioned the injury, resulted directly from the acts which Silvers agreed and was authorized to do; and hence it was the duty of Nerdlinger and Oppenheimer, who employed him and authorized him to do those acts, to see to it, that the area was so guarded as to prevent injury. The contract imposed no obligation on Silvers, as between him and Nerdlinger and Oppenheimer, to guard the area; it simply required him to execute the work in a proper manner. If they had required Silvers to stipulate in the contract that he would keep the area properly guarded during the progress of the work, and he had failed to do so, by which they were held liable, Silvers would unquestionably have been liable to them on his contract; but as no such stipulation was made in the contract, no implied obligation to that effect arises from it as between these parties, whatever liability Silvers may have incurred to others, by leaving the area unguarded. If Silvers, by digging the area and leaving it unprotected, made himself amenable to Dwelly, he thereby, at most, only became a joint wrong doer with Nerdlinger and Oppenheimer, who procured it to be dug, and were therefore alike bound to see that it was kept properly guarded.

They might both have been liable to Dwelly, but both being wrong doers *in pari delicto*, neither would be liable to answer over to the other. It is well settled that one of several joint wrong doers, against whom a recovery has been had, has no remedy against the others for contribution.

The conclusion reached in this case is very fully sustained by the Court of Appeals of New York, in *The City of Buffalo* v. *Holloway*, 3 Seld. 493. There, the City of Buffalo contracted with Holloway for the erection of a sewer in one of the streets of the city. In the proper execution of the work Holloway dug a pit or hole in the middle of the street, about twelve feet in length, four feet wide and fifteen feet deep, and neglected to guard it at night with proper lights and barricades; in consequence of which, one Tripp, while lawfully passing along the street, without fault on his part, fell into the pit and was greatly injured. Tripp sued the city and recovered $1,067.62. The city thereupon sued Holloway to recover back said sum. The contract contained no provision that Holloway should keep the pit guarded during the execution of the work, but it was averred in the complaint, as it is here, that it was the duty of Holloway, as the contractor, to use due care while the pit remained open to properly guard the same with proper lights, guards, and barricades, so as to protect persons passing on and along the street from injury.

The question arose on a demurrer to the complaint, which had been sustained by the lower court. The Court of Appeals, in holding the complaint bad, say:—" The City of Buffalo was bound to exercise its right in constructing the sewer in a careful and prudent manner, so as to avoid injury resulting to others from it; and if it were prudent and necessary to erect, maintain, and keep lights, guards and barriers about, and in the vicinity of the place excavated, during the progress of the work, in order to protect and prevent persons lawfully traveling and passing along the street from unavoidably falling into the pit or hole, and thereby sustaining injury, it was its duty to do so, and con-

sequently it is liable for injuries occasioned by the want of such proper precautionary measures. As between the city of Buffalo and the defendant, the obligation of the latter extended no farther than to perform his part of the contract made for the construction of the sewer according to its terms, with reasonable skill, and consequently, he is only liable to the city to compensate it for such injuries as it sustained for the want of the exercise of such skill in the performance of his contract * * * It will be observed, that it is not stated or alleged in the complaint that it was not necessary for the defendant, in order to construct the sewer in pursuance of the terms of his contract, to excavate the pit or hole in every respect as it was done, or that there was any lack of skill manifested in executing the contract in that respect." It is further said in that case, that if the excavation in the street was such as to require that it should be guarded, "the city might have contracted with the defendant to take such precautionary measures; in that event the duty, as between him and the city, would have devolved upon him, and he would have been liable for all the consequences resulting to it for any neglect on his part in observing his stipulations in that respect; or the city may have judged the measures unnecessary, and therefore omitted to provide for them in its contract with the defendant, or, if otherwise, the city might have chosen to contract for the doing of that service with some other person. In either case the defendant would owe no such duty to the city, whatever liability he might have incurred to others." The ruling in that case was approved in the subsequent case of *Storrs* v. *The City of Utica, supra.*

The appellees seem to rely upon the case of *The City of Chicago* v. *Robbins, supra,* as sustaining their right to recover against Silvers. We do not so understand that case. There the area was constructed by Robbins for his own exclusive use and benefit, under an implied license of the city. It was left for a considerable time without sufficient guards or covering, which was known to Robbins.

Woodbury, in passing along the sidewalk, without negligence on his part, fell into the area, and was seriously injured. He sued the city, and recovered a judgment for over two thousand dollars. The city thereupon sued Robbins as the wrong doer in fact, to compel him to refund the amount so recovered by Woodbury. It was held by the Supreme Court, that the city, having exclusive control over the streets, was bound to see that they were kept in proper repair and condition to avoid injury to those passing along the same, and was therefore primarily liable to Woodbury for the damages occasioned to him by the area being left open without proper guards; but that the city, not being a wrong doer in fact, could compel Robbins, who alone was at fault, and for whose exclusive benefit the area was constructed, to answer over to the city for the amount recovered by Woodbury. The decision is clearly put upon the ground that Robbins was alone to blame, and that no fault, in fact, was chargeable to the city. The court say : "The rule of law is, that one of two joint wrong doers cannot have contribution from the other. It is difficult, in this case to see how the city was to blame, and least of all, how Robbins can impute blame to it." And (as bearing on the question of the liability of Silvers in this case) it is further said that "Robbins, in the exercise of his privilege, did not use even ordinary care. There is no provision in his contract with Button, nor with the men who laid the flagging or put on the iron grating, that they should provide proper lights and guards."

That case, in as far as it has any bearing on the one before us, so far from sustaining the right of the appellees here to recover against Silvers, seems to us as directly to the reverse. We think that neither the complaint nor the special finding of the court is sufficient to sustain the judgment against Silvers, and it must therefore be reversed.

The judgment is reversed, with costs, and the cause remanded, with instructions to the Circuit Court to over-

rule the demurrer to the third paragraph of the answer, and sustain it to the complaint.

*J. B. & W. Niles* and *J. A. Thornton*, for appellant.

*J. L. Worden* and *J. Morris*, for appellees.